UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| NELSON SANTIAGO, alias John Doe and ABEL SANCHEZ, alias John Doe <br> Plaintiffs, <br><br> vs. <br><br> MATTHEW SHERIDAN, Individually and in his Official Capacity as an Officer of the Providence Police Department and CITY OF PROVIDENCE, by and through its Treasurer and Senior Advisor James J. Lombardi III <br> Defendants. | : <br> : <br> : <br> : <br> :    C.A. No. 1:19-CV-00591-JJM-PAS <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

PLAINTIFFS' OBJECTIONS TO DEFENDANTS' MOTIONS IN LIMINE

Now comes the Plaintiffs in the above-entitled matter, by and through counsel, and hereby object to the Defendants' Motion in Limine, as follow:

I.    DEFENDANTS' MOTION IN LIMINE TO PRECLUDE THE PLAINTIFF FROM INTRODUCING AND/OR REFERENCING EVIDENCING EVIDENCE OR TESTIMONY SOUNDING IN NEGLEGENCE

Plaintiffs intend to present evidence of Defendant Sheridan's unprovoked physical attack upon each of them. Whether that conduct is deemed negligent or intentional and whether such a finding establishes the elements of a count in Plaintiffs' Complaint is a determination to be made by the jury, subject to the Court's instructions. The Plaintiffs do not intend to elicit testimony from any witness nor do the Plaintiffs expect any witness to declare that Sgt. Sheridan's actions were in fact negligent.

II.    PLAINTIFFS' MOTION IN LIMINE RE: INJURIES/DAMAGES/MEDICAL RECORDS

     a. Plaintiff Santiago: Plaintiff Santiago alleges to have suffered an injury to his ankle during the altercation at issue. Admittedly, he testified at his deposition that he does not know whether his ankle was injured by twisting movements or by getting stepped on, but there is no question that the injury occurred during the altercation. In support of their Motion in Limine, Defendants point solely to the deposition

testimony of Santiago which disputes whether Defendant Sheridan caused the injury. However, similarly in their Motion for Summary Judgment, the Defendants fail to mention that in his sworn answers to interrogatories, Santiago clearly attributed his ankle injury to Defendant Sheridan. (See Exhibit 'A', attached hereto). It is within the purview of the jurors to resolve that conflict in testimony. If after considering Santiago's trial testimony, deposition testimony and sworn answers to interrogatories, the jurors find that Defendant Sheridan, in fact, caused the injuries to Santiago's ankle, then the medical records are clearly relevant. If on the other hand, the jurors find that Defendant Sheridan did not cause the injuries to Santiago's ankle, then the medical records are immaterial and could not prejudice Defendant Sheridan, as the jury would have already determined that he was not responsible for injury regardless of what the medical records say.

b. <u>Plaintiff Sanchez:</u> Plaintiff Sanchez's deposition testimony, answers to interrogatories (See Exhibit "B", attached hereto) and photographs, are all consistent and evidence that he suffered bruises and abrasions to his face from being thrown to the ground by Defendant Sheridan. The medical records evidence such injuries, and accordingly are clearly relevant. Whether Plaintiff Sanchez was rendered unable to work for five and a half years as a result of those injuries is something to which he can testify, and the jury will have to determine if that testimony is credible. Plaintiff Sanchez is not offering an expert opinion. He would simply be testifying as how the injuries he suffered affected his everyday life. Accordingly, no vocational or medical expert is necessary in order to allow such testimony. Clearly, such testimony would be valuable in convincing the jury to believe his testimony. However, the lack of a medical or vocational expert does not preclude Plaintiff Sanchez from presenting firsthand direct evidence, to wit, testimony about his own lived experience. On the other hand, if the Defendants sought to present evidence to rebut Sanchez's contention, the Defendants would certainly need to produce expert testimony. Sanchez, as a Plaintiff, however, does not.

III. <u>PLAINTIFFS' MOTION IN LIMINE TO PRECUDE THE PLAINTIFFS FROM INTRODUCING AND/OR REFERENCING EVIDENCE OR TESTIMOY REGARDING ALLEGED EMOTIONAL DISTRESS</u>

Plaintiffs intend to testify about Defendant Sheridan's unprovoked attack upon them, as well as the injuries that they sustained as a result. They also intend to testify about the effect that the attack and injuries had on them. In order for the jury to get a complete picture of what the Plaintiffs experience, they must be allowed to hear the entire story, including the physical and psychological effects that the attack had on them. Testimony from the Plaintiffs about their

lived experience as a result of the attack is direct evidence. Moreover, a psychological component to their experience lends credibility to the violent and unprovoked nature of the attack, which the jury may expect under the circumstances. Precluding the Plaintiffs from testifying about what they experienced will give the jury a false impression about the significance of the event. The question of whether Defendant Sheridan's conduct can be found to constitute the tort of intentional/negligent infliction of emotional distress is a different issue. The caselaw is clear that in order to establish that civil wrong, a Plaintiff must present medical testimony of some physical manifestation of said emotional distress. However, the Plaintiffs do not need to establish the intentional/negligent infliction of emotional distress in order to be able to testify as to what they personally experienced. For example, absent medical testimony and an x-ray showing a broken femur, a Plaintiff could not testify that his leg was actually broken. That Plaintiff could certainly, however, testify that he felt his leg crack and thereafter could not walk on it. Emotional distress is no different. The Plaintiffs know what they felt, and they are entitled to testify accordingly. Such testimony about their emotional distress is relevant, even if not offered to establish the intentional/negligent infliction thereof.

IV.    <u>PLAINTIFFS' MOTION IN LIMINE RE: HEARSAY TESTIMONY OF PHANTOM LIEUTENANT</u>

Any statements made by a member of the Providence Police Department should be considered an admission by a part opponent. Accordingly, such testimony, by definition, is not hearsay. As to the identity of the Lieutenant being unknown. Based on the context of Plaintiff's Sanchez testimony, i.e., that the Lieutenant facilitated Plaintiff Sanchez's release for $40.00. Defendant City of Providence is uniquely/exclusively qualified to determine the Lieutenant's identity and determine the veracity of Plaintiff Sanchez's statement. As to Plaintiff Sanchez, he is entitled to testify to his recollection of what a member of the Providence Police stated to him, as such statements are not hearsay.

V.    <u>PLAINTIFFS' MOTION IN LIMINE RE: "MONELL EVIDENCE" INCLUDING BUT NOT LIMITED TO PRIOR AND SUBSEQUENT COMPLAINTS OF MICONDUCT/DISCIPLINARY HISTORY</u>

Plaintiffs do not intent to introduce, in their case-in-chief, any Monell Evidence. However, if during the testimony of Defendant Sheridan such evidence becomes relevant, i.e., he "opens the door", Plaintiffs reserve the right to introduce such evidence on cross-examination or rebuttal.

For the reasons set forth herein, the Plaintiffs respectfully request that the Court deny the Defendants' Motions in Limine.

> PLAINTIFFS,
> NELSON SANTIAGO and ABEL SANCHEZ
> By his Attorneys,
>
> /s/ Albert E. Medici, Jr.
> Albert E. Medici, Jr., Esq. (R.I. Bar No. 4584)
> MEDICI & SCIACCA, P.C.
> 1312 Atwood Avenue
> Johnston, RI 02919
> Telephone: (401) 946-3910
> Facsimile:  (401) 942- 4918
> Email: am@mslaw-pc.com

CERTIFICATION OF SERVICE

I hereby certify that on this 12th day of June, 2024, I caused a true copy of the within to be electronically shared as well as sent via regular mail to the following:

Jillian H. Barker, Esq.
Senior City Solicitor
jbarker@providenceri.gov

Steven B. Nelson, Esq.
Senior Assistant City Solicitor
snelson@providenceri.gov

City of Providence Solicitor's Office
444 Westminster Street, Suite 220
Providence, RI 02903

Michael J. Colucci, Esq.
OLENN & PENZA
530 Greenwich Avenue
Warwick, RI 02886
mjc@olenn-penza.com

/s/ Albert E. Medici, Jr.

# **<u>EXHIBIT A</u>**

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NELSON SANTIAGO            :
and ABEL SANCHEZ           :
                           :
                           :
         vs.               :    C.A. No. 1:19-cv-591-JJM-PAS
                           :
MATTHEW SHERIDAN, Individually  :
and in his Official Capacity as an Officer :
of the Providence Police Department and :
CITY OF PROVIDENCE by and through :
its Treasurer and Senior Advisor :
James J. Lombardi III      :

### PLAINTIFF, NELSON SANTIAGO, ANSWERS INTERROGATORIES PROPOUNDED BY DEFENDANT MATTHEW SHERIDAN

1.  State your name, address, date of birth, marital status, and any other names of which you are known.

    **ANWER: Nelson Santiago, dob 11/16/92, single.**

2.  State the name, address, dates of treatment, and costs of treatment for all medical care providers/facilities, including mental health care facilities, which provided services to you for any of the injuries alleged.

    **ANSWER: Brigham and Women's Faulkner Hospital, BFW Emergency FLK, 1153 Centre Street, Boston, MA 02130-3446.**

3.  State the name and address of your personal physician(s) and/or primary medical care provider(s) for the last ten (10) years.

    **ANSWER: Brookside Clinic, Jamica Plains, Dr. Hartley from age 10 to age 20.**

4.  If you sustained bodily or mental injury from any type of accident or mishap within the last ten (10) years for which medical treatment was rendered, describe the same and identify by name and address all medical care facilities providing treatment therefor.

    **ANSWER: Auto accident on June 2018. Fractured nose. Vehicle rolled over. Fracture nose, scratches and bruise. Received medical attention at Brigham and Women's Faulkner Hospital.**

5. If you are claiming lost wages and/or an impairment to your earning capacity, state the name and address of your employer at the time of the incident, the type of employment, your average weekly wage, and the dates which you were out of work because of the alleged injuries.

**ANSWER: Door Dash, food delivery, $800-$900 per week. Could not do Door Dash for 2-3 months. Also, did construction work as laborer for my uncle Manny Biaz, $500-$600 per week. Never went back.**

6. If you are working at the current time, please state the name and address of your employer, the type of work performed, and your average weekly wage.

**ANSWER: Uber. Approximately $800.00 per week.**

7. If you have lost any time from work since the incident for any other reason and not due to the injuries allegedly received in this incident, please state the reasons, indicate the periods of time lost and the amount of income lost, if any, stating in complete detail how you compute such a loss.

**ANSWER: Did not drive Uber due to pandemic. Also, had job working driving a truck for True Worlds Foods, 22 Food Mart Road, Boston, MA, which I had left but could not return to due to the pandemic.**

8. If you were self-employed at the time of the incident and you claim to have lost any income solely as a result of this incident, fully describe your business, firm or partnership, state how much net income you claim to have lost, and explain in complete detail how you compute such loss and include in your answer the following: state how much gross and how much net income you realized from your business for each of the three (3) full calendar years or fiscal years immediately preceding this incident, and also for the period of time thereafter to the present time. (If you were engaged in a partnership or joint venture, supply such amounts for the firm, separately supply the percentage and amount of your actual participation in the net income for such periods of time, and what your normal percent of participation is.)

**ANSWER: To the extent that Door Dash is self-employment, see Answer to Int. 5, above.**

9. Do you have in your possession or under your control any books, papers, documents, ledgers or records which will support your claimed loss of salary, wage, or business income? If so, please describe and identify them, and state who has custody of them and where they are located.

**ANSWER: See Uber App & Door Dash App download.**

10. State the name and last known address(es) of all witnesses known to you who have witnessed any parts or portions of the alleged incident and/or who might otherwise have knowledge of the same. If said individuals are related to you by blood or marriage, please so state the relationship.

2

**ANSWER:** Myself, Able Sanchez, Jose Suazo and Ken Nugyen. I am not related by blood or marriage to any listed individual.

11. If you have been convicted of any crimes within the last ten (10) years, for each said conviction state the charge, the disposition, the court, and the date of judgment/conviction.

**ANSWER:** No.

12. Describe all injuries, mental and physical, allegedly sustained in this incident, including in your answer the duration of each and when partial and full recovery was made.

**ANSWER:** I had a broken right foot and twisted ankle. Bruises, scraps and contusions on my face. Back pain. I had a cast on my foot for approximately two months. I still have issues, nerve pain, weakness today. I cannot stand for a long period of time, it starts to give out on me, cannot play basketball, run, etc. Anxiety, PTSD.

13. Describe the alleged incident in question, identifying the actions of all parties involved, including all conduct on the part of the defendants that you allege to be wrongful.

**ANSWER:** On Sunday November 13, 2016, Abel Sanchez, myself, and a couple of friends went out to Rhode Island for my birthday to smoke hookah, dance and enjoy the night. No drinks were consumed that night because we knew we had a long ride home, so we only smoked hookah. We were also in a rental car which was an expensive black BMW, so we absolutely didn't want to risk anything.
We were leaving the facility back to the car when Abel asked Nelson to let him drive (asking not shouting) when an officer (not Sheridan) had asked us if we were drinking and we told him "No we were only smoking hookah, we have a long ride back to Boston" he then said "Alright guys drive home safe" then left to inspect other areas of the parking lot.
At this point is when an officer (Sheridan) approached the vehicle not acknowledging that we had already been spoken to by one of his peers grabbed Abel by the arm and back of the neck and told him to get in the car. Abel in shock asks the officer "Why are you grabbing my neck?" While trying to follow the directions by stepping towards the back of the vehicle Sheridan then proceeds to open the back door of the BMW to shove Abel by the neck into the back seat. The anger in Sheridan's eyes was so terrifying, the other two friends in the vehicle did not want to dare pull out their phones in fear that they would get the same treatment or even worst get shot to be mistaken their cell phones for a weapon.
As Sheridan continued to use brute force and rough Abel up he then tells him "Next time don't ask fucking questions and get in the car " while choking him aggressively inside of the car. Sheridan was actually in the back seat with Abel, choking him with both hands and the rest of us could not believe what was happening. As this is going on, another officer tries to calm the incident down but Sheridan continues to abuse his power and drag Abel out of the car, throws him on the ground head first and then starts to assault him with punches to his back and neck and also assaulting him in the knees and head with a hard object as Abel was being put in cuffs, while Abel is on the ground bleeding from the cuts and scrapes on his face, officers were putting all their weight on Abel's back, who weighs only 130lbs,

3

applying pressure to his neck and collar bone. I then stepped outside of the car and says "Hey stop, you guys are going to kill him if you don't stop, he hasn't done anything wrong we are just trying to go home". Sheridan in rage then grabs me and things instantly spiraled out of control, which led to me being thrown to the ground, face mushed on to the pavement, assaulted with a hard object to the back of the head and almost choked unconscious from a knee being forced on my neck. I had to try to yell "I can't breathe!" Multiple times hoping they would hear me to try to get them to stop. My leg was then stomped on a numerous amounts of times by officers while I was on the ground in cuffs, which resulted in my ankle being sprained and my right foot to be fractured. Officer Sheridan put the hand cuffs on me so tight my wrist was bruised and in pain for days.

Everything was perfectly fine on this great night in celebration of my 24th birthday in beautiful Rhode Island until Sheridan got involved and that is when things went absolutely insane instantly and got absurdly out of hand. We have been going to providence for years to have fun and never seen that side of it. The following days Abel and I were in excruciating pain and all of our belongings were severely damaged, some lost, not to mention the nonstop trauma, pain, discomfort, loss of wages, nerve damage, anxiety, scars and paranoia we have been dealing with for the past 5 years. We love Rhode Island and Providence was once a place we loved to go to, but since this traumatic experience, we now recommend people not to travel there for their own safety. This is an ongoing problem that the City of Providence needs to take responsibility for because of the constant and consistent history of Sheridan's acts to do the opposite of his role on the police force; serve and protect.

14. State the date, time, and place of the alleged incident(s) in question.

ANSWER: November 13, 2016 at approximately 2:30am at 1280 Broad Street, Providence, RI.

15. State all addresses, including city and state, at which you resided within the last ten (10) years.

ANSWER: 99 Neponset Avenue, Roslindale, MA.

16. Describe your employment history for the last ten (10) years, including each employer and the type and duration of employment.

ANSWER: Valet – VPNE, Brighams and Women' s Hospital 2012-2014, Temp Agency (Construction) through Youth Boston 2014-2015. See also Answer to Interrogatory No. 5, above.

17. If you were charged with any criminal offense(s) as a result of this incident, state the charges and the disposition of each. Include all court appearances and, if you are claiming malicious prosecution, include all fees and expenses related to the defense thereof and to whom paid.

ANSWER: I was charged by the Providence Police Department with Resisting Arrest, Assault on a police officer and Disorderly Conduct. With the agreement of the

**Prosecutor/Solicitor for the City of Providence, all charges were filed on a not guilty plea and subsequently dismissed and expunged from by record. The not guilty filing was imposed retroactively to the date first appeared in court, so that on the date that the Court filed the case, which I believe was July 12, 2018, it was immediately expired, dismissed and expunge by the Court. I never made any admissions and always maintained my innocence, because I committed no crime.**

18. If you claim any loss and/or damage to property, please describe the same, along with the value at the time of the loss and its replacement cost.

**ANSWER: Lost $2000 earing. Coat damaged $500.**

19. If you have ever been declared disabled by any state or federal agency within the last ten (10) years, please provide the details thereof, including the disability, the dates and duration thereof, and the agency involved.

**ANSWER: No.**

20. State the name, address, area of expertise, and qualifications of any expert witness you have retained to testify on your behalf at trial, and with respect to each, provide:

(a) the subject matter on which the expert is expected to testify;

(b) the facts and opinions to which each expert is expected to testify;

(c) a summary of the grounds for each opinion of each expert;

(d) all treatises, texts, or articles relied on by the expert in forming each such opinion; and

(e) all tests, inspections, studies, calculations, or experiments relied on by the expert in forming each such opinion.

**ANSWER: Plaintiff has not yet identified any expert witnesses. Plaintiff reserves the right to supplement this answer.**

21. Outline your work, physical, and social schedules for the twenty-four (24) hour period immediately preceding the incident.

**ANSWER: Worked Door Dash and construction, and went to the gym, basic strength and endurance training.**

22. Did you consume or take any alcoholic beverages and/or drugs/medication within a twenty-four (24) hour period before said incident? If so, state the type and quantity consumed, and the time and place thereof.

ANSWER: No.

23. If you claim that you offered no physical resistance, then so state, and if you did offer physical resistance of any nature, then describe it and identify any witnesses thereto.

**ANSWER: I did not offer any physical resistance.**

24. Identify all photographs and/or videos, to include all phone and/or security camera footage, which depicts any part of the incident in question, and state who has possession of the same.

**ANSWER: See photos of injuries provided on Plaintiff's Response to Defendant's Request for Production.**

25. If you are making a claim for malicious prosecution, identify the person and/or firm that represented you in the defense of the criminal charges filed against you and provide an itemized breakdown of all services and related fees incurred in connection with the same, as well as the amounts paid and the method of payment, and any balances that remain to be paid.

ANSWER: N/A.

NELSON SANTIAGO

NOTARY

Sworn and subscribed before me on this 21st day of ~~January~~ February, 2022.

Notary

Comm. Exp.: _____

6

# **EXHIBIT B**

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

NELSON SANTIAGO
and ABEL SANCHEZ

vs.                                                                        C.A. No. 1:19-cv-591-JJM-PAS

MATTHEW SHERIDAN, Individually
and in his Official Capacity as an Officer
of the Providence Police Department and
CITY OF PROVIDENCE by and through
its Treasurer and Senior Advisor
James J. Lombardi III

## DEFENDANT, MATTHEW SHERIDAN'S
## INTERROGATORIES TO PLAINTIFF, ABEL SANCHEZ

1. State your name, address, date of birth, marital status, and any other names of which you are known.

   **ANSWER: Abel Alcibiades Saurez Sanchez, 5 Woodside Avenue, Jamaica Plain, Boston, MA, dob 7/5/1994 , single.**

2. State the name, address, dates of treatment, and costs of treatment for all medical care providers/facilities, including mental health care facilities, which provided services to you for any of the injuries alleged.

   **ANSWER: Brigham and Women's Faulkner Hospital, BFW Emergency FLK, 1153 Centre Street, Boston, MA 02130-3446.**

3. State the name and address of your personal physician(s) and/or primary medical care provider(s) for the last ten (10) years.

   **ANSWER: None.**

4. If you sustained bodily or mental injury from any type of accident or mishap within the last ten (10) years for which medical treatment was rendered, describe the same and identify by name and address all medical care facilities providing treatment therefor.

   **ANSWER: Shoulder, collar bone, scraps on face (left side), sore back, knees, back of neck, over all body pain.**

5. If you are claiming lost wages and/or an impairment to your earning capacity, state the name and address of your employer at the time of the incident, the type of employment, your average weekly wage, and the dates which you were out of work because of the alleged injuries.

**ANSWER: At the time I was doing home health aid for Life Line, Milton, MA, home health care. Weekly $500 per week. Stopped working after incident, never went back.**

6. If you are working at the current time, please state the name and address of your employer, the type of work performed, and your average weekly wage.

**ANSWER: No.**

7. If you have lost any time from work since the incident for any other reason and not due to the injuries allegedly received in this incident, please state the reasons, indicate the periods of time lost and the amount of income lost, if any, stating in complete detail how you compute such a loss.

**ANSWER: No.**

8. If you were self-employed at the time of the incident and you claim to have lost any income solely as a result of this incident, fully describe your business, firm or partnership, state how much net income you claim to have lost, and explain in complete detail how you compute such loss and include in your answer the following: state how much gross and how much net income you realized from your business for each of the three (3) full calendar years or fiscal years immediately preceding this incident, and also for the period of time thereafter to the present time. (If you were engaged in a partnership or joint venture, supply such amounts for the firm, separately supply the percentage and amount of your actual participation in the net income for such periods of time, and what your normal percent of participation is.)

**ANSWER: N/A.**

9. Do you have in your possession or under your control any books, papers, documents, ledgers or records which will support your claimed loss of salary, wage, or business income? If so, please describe and identify them, and state who has custody of them and where they are located.

**ANSWER: None.**

10. State the name and last known address(es) of all witnesses known to you who have witnessed any parts or portions of the alleged incident and/or who might otherwise have knowledge of the same. If said individuals are related to you by blood or marriage, please so state the relationship.

**ANSWER: Myself, Nelson Santiago, Jose Suazo and Ken Nugyen. I am not related by blood or marriage to any listed individual.**

11. If you have been convicted of any crimes within the last ten (10) years, for each said conviction state the charge, the disposition, the court, and the date of judgment/conviction.

**ANSWER: No.**

12. Describe all injuries, mental and physical, allegedly sustained in this incident, including

2

in your answer the duration of each and when partial and full recovery was made.

**ANSWER:** Still have issues with my shoulders and knees, neck pain since the incident. Mental I have anxiety particularly interacting with law enforcement.

13. Describe the alleged incident in question, identifying the actions of all parties involved, including all conduct on the part of the defendants that you allege to be wrongful.

**ANSWER:** On Sunday November 13, 2016, Nelson Santiago, myself, and a couple of friends went out to Rhode Island for Nelson's birthday to smoke hookah, dance and enjoy the night. No drinks were consumed that night because we knew we had a long ride home, so we only smoked hookah. We were also in a rental car which was an expensive black BMW, so we absolutely didn't want to risk anything.

We were leaving the facility back to the car when I asked Nelson to let me drive (asking, not shouting) when an officer (not Sheridan) had asked us if we were drinking and we told him "No we were only smoking hookah, we have a long ride back to Boston" he then said "Alright guys drive home safe" then left to inspect other areas of the parking lot.

At this point is when an officer (Sheridan) approached the vehicle not acknowledging that we had already been spoken to by one of his peers grabbed me by the arm and back of the neck and told me to get in the car. I was in shock and asked the officer "Why are you grabbing my neck?" While trying to follow the directions by stepping towards the back of the vehicle Sheridan then proceeds to open the back door of the BMW to shove me by the neck into the back seat. The anger in Sheridan's eyes was so terrifying, the other two friends in the vehicle did not want to dare pull out their phones in fear that they would get the same treatment or even worst get shot to be mistaken their cell phones for a weapon.

As Sheridan continued to use brute force and rough me up he then tells me "Next time don't ask fucking questions and get in the car " while choking him aggressively inside of the car. Sheridan was actually in the back seat with me, choking me with both hands and the rest of my friends could not believe what was happening. As this is going on, another officer tries to calm the incident down but Sheridan continues to abuse his power and drag me out of the car, throws me on the ground head first and then started to assault me with punches to my back and neck and also assaulting me in the knees and head with a hard object as I was being put in cuffs, while I was on the ground bleeding from the cuts and scrapes on my face, officers were putting all their weight on my back (I only weigh 130lbs) applying pressure to my neck and collar bone. Nelson then stepped outside of the car and said, "Hey stop, you guys are going to kill him if you don't stop, he hasn't done anything wrong we are just trying to go home". Sheridan in rage then grabbed Nelson and things instantly spiraled out of control, which led to Nelson being thrown to the ground, face mushed on to the pavement, assaulted with a hard object to the back of the head and almost choked unconscious from a knee being forced on his neck. Nelson had to try to yell "I can't breathe!" Multiple times hoping they would hear him to try to get them to stop. Nelson's leg was then stomped on a numerous amounts of times by officers while he was on the ground in cuffs, which resulted in his ankle being sprained and his right foot to be fractured. Officer Sheridan put the hand cuffs on Nelson so tight that his wrist was bruised and in pain for days.

Everything was perfectly fine on this great night in celebration of Nelson's 24th birthday in beautiful Rhode Island until Sheridan got involved and that is when things went absolutely insane instantly and got absurdly out of hand. We have been going to providence for years to have fun and

3

never seen that side of it. The following days Nelson and I were in excruciating pain and all of our belongings were severely damaged, some lost, not to mention the nonstop trauma, pain, discomfort, loss of wages, nerve damage, anxiety, scars and paranoia we have been dealing with for the past 5 years. We love Rhode Island and Providence was once a place we loved to go to, but since this traumatic experience, we now recommend people not to travel there for their own safety. This is an ongoing problem that the City of Providence needs to take responsibility for because of the constant and consistent history of Sheridan's acts to do the opposite of his role on the police force; serve and protect.

14. State the date, time, and place of the alleged incident(s) in question.

ANSWER: November 13, 2016 at approximately 2:30am at 1280 Broad Street, Providence, RI.

15. State all addresses, including city and state, at which you resided within the last ten (10) years.

ANSWER: 5 Woodside Avenue, Jamaica Plain, Boston, MA.

16. Describe your employment history for the last ten (10) years, including each employer and the type and duration of employment.

ANSWER: Home Health, Tempus Unlimited (home health aid/caretaker)

17. If you were charged with any criminal offense(s) as a result of this incident, state the charges and the disposition of each. Include all court appearances and, if you are claiming malicious prosecution, include all fees and expenses related to the defense thereof and to whom paid.

ANSWER: I was charged by the Providence Police Department with Resisting Arrest, Assault on a police officer and Disorderly Conduct. With the agreement of the Prosecutor/Solicitor for the City of Providence, all charges were filed on a not guilty plea and subsequently dismissed and expunged from by record. The not guilty filing was imposed retroactively to the date first appeared in court, so that on the date that the Court filed the case, which I believe was July 12, 2018, it was immediately expired, dismissed and expunge by the Court. I never made any admissions and always maintained my innocence, because I committed no crime.

18. If you claim any loss and/or damage to property, please describe the same, along with the value at the time of the loss and its replacement cost.

ANSWER: Lost one earing, one earing broken, $1600. Lost coat, $1200. Cuban link chain, damaged, devalued from $4800, damaged worth $2000. Shirt $250, ripped.

19. If you have ever been declared disabled by any state or federal agency within the last ten (10) years, please provide the details thereof, including the disability, the dates and duration thereof, and the agency involved.

**ANSWER: No.**

20. State the name, address, area of expertise, and qualifications of any expert witness you have retained to testify on your behalf at trial, and with respect to each, provide:

    (a) the subject matter on which the expert is expected to testify;

    (b) the facts and opinions to which each expert is expected to testify;

    (c) a summary of the grounds for each opinion of each expert;

    (d) all treatises, texts, or articles relied on by the expert in forming each such opinion; and

    (e) all tests, inspections, studies, calculations, or experiments relied on by the expert in forming each such opinion.

**ANSWER: Plaintiff has not yet identified any expert witnesses. Plaintiff reserves the right to supplement this answer.**

21. Outline your work, physical, and social schedules for the twenty-four (24) hour period immediately preceding the incident.

ANSWER:

22. Did you consume or take any alcoholic beverages and/or drugs/medication within a twenty-four (24) hour period before said incident? If so, state the type and quantity consumed, and the time and place thereof.

**ANSWER: No.**

23. If you claim that you offered no physical resistance, then so state, and if you did offer physical resistance of any nature, then describe it and identify any witnesses thereto.

**ANSWER: I did not offer any physical resistance.**

24. Identify all photographs and/or videos, to include all phone and/or security camera footage, which depicts any part of the incident in question, and state who has possession of the same.

**ANSWER: See photos of injuries provided on Plaintiff's Response to Defendant's Request for Production.**

25. If you are making a claim for malicious prosecution, identify the person and/or firm that represented you in the defense of the criminal charges filed against you and provide an itemized breakdown of all services and related fees incurred in connection with the same, as well as the amounts

paid and the method of payment, and any balances that remain to be paid.

**ANSWER: N/A.**

_____
Abel Sanchez

NOTARY

Sworn and subscribed before me on this 21ST day of ~~January~~ February, 2022.

_____
Notary

Comm. Exp.: _____

6